KOKOMO TRUST COMPANY *v.* HILLER.

[No. 9,302. Filed May 29, 1917. Rehearing denied January 9, 1918. Transfer denied May 15, 1918.]

1. DEEDS.—*Wills.*—*Construction.*—*Vesting of Interest.*—An instrument having all the formalities of a deed will be construed as such, and not as a will, where it appears therefrom that the maker intended to convey any interest whatever to vest on its execution. p. 618.

2. DEEDS.—*Delivery Through Third Person.*—*Effect.*—Where a deed is delivered through the instrumentality of a third person, the

title conveyed relates back to its execution completed by delivery to the grantee. p. 620.

3. DEEDS.—*Wills.—Construction.—Reservation of Life Estate.*—A recital reserving to the grantor, in an instrument in the form of a deed, the possession and control of lands during his lifetime amounts to a reservation of a life estate, and does not characterize the instrument as testamentary. p. 620.

4. DEEDS.—*Construction.—Reservation of Life Estate.—Defeasible Fee.*—An instrument in the form of a deed, which, after reserving a life estate to the grantor, reserved to the grantor the right to sell and convey the land during his lifetime, and provided that at his death the conveyance should be in full force and effect if he should die seized of the land, granted a present estate in fee, subject to a life estate, defeasible by reason of the reserved power, but which ripened into an indefeasible fee by the nonexercise of the power. p. 622.

5. DEEDS.—*Delivery Through Third Person.—Intent.*—Facts showing that the grantor, after signing and acknowledging deeds reserving a life estate, handed them to his attorney, who drew them as directed by the grantor, and instructed the attorney to keep them in his safe for the grantees and to have them recorded and delivered to them immediately upon the grantor's death, expressing a desire at the time that the grantees be informed concerning the deeds, which instructions were fully carried out, were sufficient to show that the grantor intended a delivery of the deeds. pp. 624, 630.

6. DEEDS.—*Delivery.—Intention.*—The grantor's intention is the controlling element in determining the question of the delivery of a deed, and such intention may be manifested either by acts or by words. p. 625.

7. DEEDS.—*Delivery to Third Person.—Reservation.—Effect in Determining Intention.*—Where a grantor executed deeds reserving a life estate and handed them to a third party, with instructions to keep them until the grantor's death and then to have them recorded and delivered to the grantees, reserving no control over the deeds, a reservation in each of the deeds of a right to sell and convey the lands was not part of the instructions to the third party, but the reservation and the instructions were distinct propositions, the former dealing with the quantity of estate conveyed and the latter with the disposition of instruments conveying such quantity. p. 627.

8. DEEDS.—*Delivery.—Peremptory Instruction.—Inference.*—In an action to quiet title, in which, under the particular circumstances, it devolved upon the plaintiffs, who claimed under a will, to establish the invalidity of deeds under which the defendants

claimed title, the validity of the deeds depending on the sufficiency of the delivery thereof, there was no error in giving a peremptory instruction for the defendants, in view of proof of undisputed facts which were reasonably susceptible only of the inference that the grantor intended a delivery of the deeds. pp. 628, 630.

From Miami Circuit Court; *Charles A. Cole.* Judge.

Action by Ora M. Chamness and others against Carrie M. Hiller and others, in which the Kokomo Trust Company was joined as a plaintiff. From a judgment for the defendants, the plaintiffs appeal. *Affirmed.*

*Albert Ward, Rabb, Mahoney & Fansler* and *M. Winfield,* for appellant.

*Long, Yarlott & Souder, Blacklidge, Wolf & Barnes* and *B. B. Richards,* for appellees.

CALDWELL, J.—Appellants, Ora M. Chamness, Spencer L. H. Chamness, Rebecca A. Chamness, and Frank M. Chamness, brought this action in the Cass Circuit Court against appellees, Carrie M. Hiller, Edna Ballard and husband, and Mary E. Semans and husband, to quiet title to 120 acres of land in Cass county. Subsequently, by reason of certain provisions of the last will of Lewis F. Murphey, deceased, appellant Kokomo Trust Company, as executor of such will, was joined as a plaintiff. Appellees Carrie M. Hiller, Edna Ballard, and Mary E. Semans, claiming to own the lands involved, each a forty-acre tract thereof, by cross-complaint sought to quiet their respective title against appellants. Answers were filed, and the cause placed at issue. A trial in the Cass Circuit Court resulted in a judgment in favor of appellees. A new trial as of right having been granted appellants, a trial on change of venue was had in

the Miami Circuit Court before a special judge and a jury. At the close of the evidence, the jury, in obedience to a peremptory instruction, returned a verdict in favor of appellees, on which judgment was rendered. An intelligent comprehension of the questions presented requires a brief statement of the facts as follows:

William H. Holland, a widower, died intestate in 1898. Three daughters had been born to him, Caroline, Sarah Alice, and ——————. Caroline married Lewis F. Murphey, and in 1882 died intestate, leaving surviving her one child, the appellant Ora M. Chamness. The other individual appellants are children of the latter. After the death of Caroline, Sarah Alice also was married to Lewis F. Murphey. She died childless and intestate in July, 1912. William H. Holland's other daughter married a man named Hiller, and died after the death of her father. Appellees are her children. It will be observed that Ora M. Chamness and appellees are nieces of Sarah Alice Murphey. William H. Holland at the time of his decease owned 400 acres of land, which descended in equal parts to his heirs Ora M. Chamness, Mrs. Hiller and Sarah Alice Murphey. In a division, Ora M. Chamness became the owner in severalty of 160 acres, and Mrs. Hiller and Sarah A. Murphey of 240 acres as tenants in common. Subsequently, the latter acquired by purchase certain town property. At her decease, her husband, Lewis F. Murphey, inherited from her such town property, and an undivided one-half of the 240 acres. In a division he subsequently became the owner in severalty of the 120 acres involved in this action. Lewis F. Murphey died testate in November, 1912. It is conceded here that, by

the terms of his last will, the title to all the real estate of which Lewis F. Murphey died the owner is held and owned in trust by appellant trust company for the period of the natural life of Ora M. Chamness for the use and benefit of herself and children, and that such children own the fee subject to such life estate. It is conceded, also, that appellants' claim of title to the lands involved in this action is based solely on such will. At the time of the execution of such will, Lewis F. Murphey was not the owner of the lands involved here, and such lands are not described or specifically referred to therein, the devises being expressed in general terms.

It is conceded, also, that appellees claim title to such lands only under certain writings in the form of deeds, signed and acknowledged by Lewis F. Murphey on August 20, 1912. If, under the rules that govern, it may be said that such writings were effective as deeds, to pass title, then the judgment must be affirmed, otherwise reversed.

The facts are as follows: During the last years of his life, Lewis F. Murphey resided at Galveston in Cass county. Benjamin F. Richards, an attorney, also resided at Galveston and attended to most of Mr. Murphey's legal business, and during the last year's of the latter's life was the custodian of his will. Shortly after the decease of his second wife, Murphey, as we have said, acquired title in severalty to the lands involved here, an undivided interest in the 240-acre tract having been inherited by him on the decease of his said wife. Shortly thereafter, on August 20, 1912, Murphey called at Richards' office, and recited to him that he had an understanding with his wife that the lands should go to her four nieces,

Ora M. Chamness and appellees, in equal parts. He thereupon directed Richards to prepare four deeds, one conveying the town property to Mrs. Chamness, his daughter, and the others conveying 120 acres to appellees, a designated forty-acre tract to each of them. He directed that the deed to Mrs. Semans and the deed to Carrie M. Hiller should each recite that the grantee therein should pay to Mrs. Ballard $500 by reason of a difference in the value of the tracts. He directed that each of these deeds be worded so that he might retain possession and control of the lands described during his life, with the right to sell and convey if he desired to do so. Richards prepared the deeds in Murphey's absence. Later in the day he returned, Richards read the deeds to him, and he also read them himself. He pronounced them all right, and then signed and acknowledged them. He then directed Richards to keep the deeds in his safe. He said further: "In case I should die, you have those deeds recorded and delivered to the girls just as soon as I am gone. I have got it in my head that I am not going to be here long; I want them fixed up." He said, also, respecting the deeds: "Keep these for the girls, and when I die, have them recorded right away, and deliver them—hand them over to where they belong." Richards asked him if he desired that he should tell the girls about the deeds. Murphey replied: "I would just as soon or a little rather you would tell them." Richards informed Carrie Hiller of the making of the deeds. The other girls he did not see prior to the death of Murphey. The above conversation between Murphey and Richards was had immediately after the deeds were signed. The deeds remained in Richards' possession until Murphey's

death. Two days later; November 7, 1912, he caused them to be recorded, and then delivered them to the grantees. Murphey remained in possession of the real estate involved, but made no effort to sell or convey any portion of it after the making of the deeds to appellees.

The deed to Mrs. Semans is as follows:

"Warranty Deed.

"Lewis F. Murphey to Mary E. Semans.

"This Indenture Witnesseth: That Lewis F. Murphey, unmarried and surviving husband of Sarah A. Holland Murphey, deceased, of Cass County in the State of Indiana, convey and warrant to Mary E. Semans of Adams County in the state of Indiana, for the sum of Love and Affection and One Dollar *and other considerations named below* the following described real estate, situate in Cass County, in the state of Indiana, to-wit (describing one forty-acre tract). This conveyance is made as a gift to the grantee *except that the said grantee at the death of the grantor shall pay to Edna Ballard the sum of Five Hundred Dollars.* And the grantor reserves full possession and control of the above described real estate and the right to sell and convey said real estate during his life time, but at his death if he die seized of the above real estate, then this conveyance shall be in full force and effect *after the payment of the above sum as set forth.*"

The respective deeds signed in favor of Carrie M. Hiller and Mrs. Ballard are identical with the foregoing, except as to grantee and lands described, and except also the portions of the Semans deed which

we have italicized.  Such italicized portions of the
deed appear also in the Hiller deed, but are omitted
from the Ballard deed.  Each deed was properly
signed, acknowledged and certified.

We are required first to construe these writings,
and, second, to determine whether they were deliv-
ered.  In construing the deeds, we shall not consider
or give any weight to the provision for the payment
of $500 found in two of them, as no point is made on
such provision in the briefs.  In construing these writ-
ings, we shall for the present assume that the formali-
ties of delivery requisite to their validity as deeds
were properly observed.  On such assumption, it is
appellants' contention that these instruments disclose
by their contents that they are testamentary in char-
acter and that as the steps required by the statute in
the execution of wills were not taken, in that they were
not attested by witnesses, they are of no effect.  We
therefore proceed to determine whether they are tes-
tamentary or in the nature of deeds.

It will be observed that these writings are not
couched in testamentary terms.  The characterizing
language of wills is absent.  Nothing is in
1.  terms devised or bequeathed.  The writings
contain all the statutory elements of warranty
deeds.  §3958 Burns 1914, §2927 R. S. 1881.  In each
there is a grantor and grantee designated as such.
In each the grantor by the terms of the writing "con-
veys and warrants" to the grantee certain described
premises for an expressed consideration, and each
instrument is dated, signed, and acknowledged as is
required in case of a deed.  In addition, looking to
extraneous facts, Murphey had theretofore executed
a will which was in existence.  In these writings there

is no language revoking former wills. Moreover, he stated at the time that he wanted deeds prepared, and he left them with Richards referring to them as deeds. It is therefore evident that Murphey in fact intended that they should operate as deeds. Such line of argument, however, is not conclusive. Appellants, in recognition of such fact, point to certain provisions of the deeds and insist that such provisions stamp the instrument as testamentary. Such provisions are those by which Murphey in terms reserved possession and control of the real estate and the right to sell and convey it within his lifetime, but that the conveyance should be effective at his death if he died seized of it. The courts of this state have frequently announced the rule that must be applied in determining whether a certain writing is a deed or testamentary in nature, as follows: " 'An instrument having all the formalities of a deed will be construed to operate as a deed, wherever it appears therefrom that it was the intent of the maker to convey any interest whatever to vest upon the execution of the paper. If, however, it appears that all the estate which it was the purpose to convey was reserved to the grantor during his life, and that the deed was only to take effect upon the death of the grantor, it will be construed to be testamentary in character.' " *Kelley, Gdn.,* v. *Shimer* (1898), 152 Ind. 290, 53 N. E. 233.

In discussing the nature of a testamentary provision and in distinguishing it from a provision amounting to a conveyance, the Supreme Court, in *Heaston* v. *Krieg* (1906), 167 Ind. 101, 111, 77 N. E. 805, 119 Am. St. 475, said: "It is, of course, essential to distinguish between such provisions and those in which the beneficiary takes some interest, vested

or contingent, upon the execution of the instrument.''
There are certain other rules: Thus, effect must be
given to the grantor's intent as gathered from all the
provisions of the instrument, and, in deducing such in-
tent, the instrument must be construed most strongly
against the grantor as between him and the grantee.
*Wilson* v. *Carrico* (1895), 140 Ind. 533, 40 N. E. 50, 49
Am. St. 213. Moreover, such an instrument should
be so construed that some effect may be given to it if
reasonably possible. *Davenport* v. *Gwilliams* (1892),
133 Ind. 142, 31 N. E. 790, 22 L. R. A. 244.

The writings here, if deeds, and if delivered at all,
were delivered through the instrumentality of a third
person. In such a case, as hereinafter appears,
2.   the title conveyed relates back to the execution
of the instrument completed by delivery to the
grantee. As we are for the present assuming the
delivery of the writings, we must, in applying the
rule first above quoted, construe language used
therein respecting the vesting of interest or title on
the execution of the instrument as referring by rela-
tion to the time of delivery to such third person.

The granting clause of the deed here is sufficient in
form to convey to the grantee a fee-simple estate.
§3958 Burns 1914, *supra.* The reservation is
3.   double in phase. First, the grantor reserves
possession and control of the lands during his
lifetime in connection with which there is a provision
that the conveyance shall be in full force and effect
at his decease. A provision of a deed by which the
grantor reserves to himself full control of the prem-
ises during his natural life is a reservation of a life
estate, the fee vesting on the execution of the deed,
if its granting clause is sufficient to that end. *Tim-*

*mons* v. *Timmons* (1911), 49 Ind. App. 21, 96 N. E. 622. "The general rule laid down by the authorities is that a declaration that the deed shall not go into effect until the death of the grantor does not give it a testamentary character." *Kelley, Gdn.,* v. *Shimer, supra.* The Supreme Court, in *Kelley, Gdn.,* v. *Shimer, supra, Wilson* v. *Carrico, supra,* and *Cates* v. *Cates* (1893), 135 Ind. 272, 34 N. E. 957, considered and constructed instruments in the form of deeds containing recitals to the effect that the conveyance should not be effective until the death of the grantor. In the opinions in such cases, the decisions are examined and analyzed at length. Further discussion here would therefore be mere repetition. The holding in such cases is that such language recited in a writing in the form of a deed does not characterize it as testamentary in nature; that the effect of such a recital is the reservation of a life estate, possession and enjoyment merely being thereby postponed until the death of the grantor; that, if the language of the instrument is otherwise sufficient, a fee vests on the execution of the deed, subject to the reserved life estate. To the extent that we have discussed them, the writings here are of a like nature.

We have yet to consider, however, the recital to the effect that the grantor reserved also the right to sell and convey the real estate, and that the conveyance should be in full force and effect at his death if he died seized of the lands. The situation, then, is as follows: The grantor conveyed the lands by the use of language creating a fee, reserving to himself a life estate, with power to dispose of the fee by conveyance within the period of his lifetime. Within rules already referred to, these deeds should be so

construed as that, if possible, some effect be given to them, and hence it should not be presumed that the grantor by the reserved power to convey, unless exercised, intended to destroy the estate in fee created by the granting clause of the deed. *Cates* v. *Cates, supra; Davenport* v. *Gwilliams, supra;* 8 R. C. L. 1049; *Durand* v. *Higgins* (1903), 67 Kan. 110, 72 Pac. 567; *Nichols* v. *Emery* (1895), 109 Cal. 323, 41 Pac. 1089, 50 Am. St. 43; *Pritchett* v. *Jackson* (1906), 103 Md. 696, 63 Atl. 965. Moreover, where, after a consideration of a deed in all its parts and the application of the recognized rules of construction, some subsequent portion of the instrument as the *habendum* is indicative of an intent which, if given effect, would be destructive of an estate plainly created by the granting clause, the latter will prevail over the former. *Marsh* v. *Morris* (1892), 133 Ind. 548, 33 N. E. 290; *Lamb* v. *Medsker* (1905), 35 Ind. App. 662, 74 N. E. 1012; *Carl-Lee* v. *Ellsberry* (1907), 82 Ark. 209, 101 S. W. 407, 12 L. R. A. (N. S.) 956, and note, 118 Am. St. 60; 8 R. C. L. 1044.

We do not believe that the expressed reservation of possession and control of the premises during the lifetime of the grantor, with the right to sell 4. and convey within such time, should be held to be destructive of the estate in fee granted by the conveying clause of the deed. The deeds should be construed in each case as granting a fee from which a life estate was excepted, with a reserved power which, had it been exercised, would have terminated or defeated the remainder in fee vested in the grantee by the conveying clause. The grantor, as the owner of the entire estate in the lands, had a right to convey to another an estate therein of any

designated quantity or quality from the least to the greatest, and we know of no reason why he did not have the power to convey to the grantee in each case, as we hold he did, a vested remainder in fee defeasible on the exercise of a reserved power. Such holding, of course, is based on the assumption that the deeds were delivered, recourse being had also to the principle of relation aforesaid. An analogous situation arises where by deed or will a life estate with power of disposition is granted or devised with remainder in fee over to another. In such a case, it is not held that the granted power enlarges the life estate into a fee to the annihilation of the remainder over, but rather that the life estate remains in quantity a life estate; that the remainder over is defeated only by the exercise of the power. *Beatson* v. *Bowers* (1910), 174 Ind. 601, 91 N. E. 922; *Foudray* v. *Foudray* (1909), 44 Ind. App. 444, 89 N. E. 499; *Dunning* v. *Vandusen* (1874), 47 Ind. 423, 17 Am. Rep. 709; *Chewning* v. *Mason* (1912), 158 N. C. 578, 74 S. E. 357, 39 L. R. A. (N. S.) 805, and note; *Steiff* v. *Seibert* (1905), 128 Iowa 746, 105 N. W. 328, 6 L. R. A. (N. S.) 1186, and note. In *Kelley, Gdn.,* v. *Shimer, supra,* the Supreme Court, in discussing the question of what recitals in a writing will characterize it as testamentary rather than a present conveyance of title with postponed possession and enjoyment, quotes the following from a deed involved in *Wall* v. *Wall* (1855), 30 Miss. 91, 64 Am. Dec. 147, as belonging to the latter class: " 'The deed to take effect as far as regards the *handing over* of the property *at my death;* and I reserve the right *to revoke it* at any time during my life, by filing in the clerk's office a written revocation under my hand and seal; and I do hereby make known and

declare, that the signing, sealing and delivery of this deed, and *placing the same amongst my papers,* is intended by me as *a delivery of said property at my death,* and *to take effect at that time.'*" In the Wall case, the granting clause of the deed was sufficient to convey a fee. The deed not having been revoked in the manner provided, the Court of Appeals of Mississippi held the deed valid, the court saying: "Upon the whole, we consider that this deed conveyed the present right to the property, to be enjoyed in possession at the donor's death and subject to his power to annul it in the way limited in the deed." See, also, *Nichols* v. *Emery, supra.* We conclude that each of the deeds involved here, assuming their delivery, granted a present estate in fee, subject to a life estate, defeasible by reason of a reserved power, but which ripened into an indefeasible fee by the nonexercise of the power within the time limited.

Having determined the nature of the deeds involved here, and the estates and interests thereby granted and reserved, we proceed to the question of delivery. The parties agree respecting the facts: Murphey, having signed and acknowledged the deeds, handed them to Richards, his accompanying statements being in substance as follows: "Keep these deeds for the girls; keep them in your safe; when I die have them recorded right away and deliver them—hand them over to where they belong; have them recorded and deliver them to the girls just as soon as I am gone." He also expressed a desire that the grantees be informed of the facts. Such, in substance, were Murphey's directions to Richards, without limitation or qualification—take the deeds, keep them for the grantees, when I die have

them recorded, and then deliver them to the grantees. It is not claimed that such instructions were modified by any other directions given. Such instructions were carried out literally. Under such circumstances, were the deeds delivered? The general principles that govern under such circumstances have frequently been announced by the courts. There is no doubt that a deed made by the grantor and delivered by him to a third party to be delivered to the grantee on the death of the grantor, if so delivered to the grantee and accepted by him, may be valid as between the parties, and also as against others taking with notice. *Smiley* v. *Smiley* (1888), 114 Ind. 258, 16 N. E. 585. If, under such circumstances, the grantor, when he delivers the deed to the third person, parts with all dominion, and reserves no right to recall it or alter its provisions, it is settled in this state that the delivery is effectual and that the grantee on the decease of the grantor succeeds to the title, the deed taking effect by relation as of the date of the delivery to such third person. *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 58 N. E. 439, 80 Am. St. 240, and cases; *Newman* v. *Fidler* (1911), 177 Ind. 220, 97 N. E. 785.

The following have been frequently quoted with approval by the courts of this state: "In determining what will constitute a sufficient delivery, it 6. is found that the intention is the controlling element. No particular formality need be observed, and the intention to deliver the deed may be manifested by acts or by words or by both. But one or the other must be present to make a good delivery." Tiedeman, Real Property (2d ed.) §813. "Where the deed is delivered to the grantee named, the law presumes it was done with an intent on the

part of the grantor to make it his effectual deed; but if it is delivered to a stranger, and nothing is said at the time, no such inference is drawn from the act of delivery.  *  *  *  If delivered to the grantee himself, no words are necessary, since the law presumes in such case it is for his use. If delivered to a stranger, there is no presumption; and there must, therefore, be some evidence beyond such delivery of his intent thereby to part with the title. But no precise form of words is necessary to declare such intent. Anything that shows that the delivery is for the use of the grantee is enough." 3 Washburn, Real Estate (5th ed.) 314; see *Osborne* v. *Eslinger, supra.*

Murphey's intent when he delivered the deeds to Richards was manifested by plain and unequivocal language—take the deeds and keep them for the grantees and deliver them to the grantees at my death. In the case last cited, in effect the following distinction recognized by the authorities, is drawn: Where the grantor, after signing the deed, delivers it to a third person with unconditional instructions that he either presently or on the happening of some inevitable event deliver it to the grantee, the grantor reserving no right to control the disposition of the deed or to modify it, a trust thereby arises of which the grantee is the beneficiary, and which trust may be enforced by him, but which may not rightfully be violated by either the grantor or such third person. Under such circumstances, the third person becomes trustee for the grantee, the involved trust to be completely executed at the time and by the performance of the act appointed at its creation. But where the deed is placed in the hands of the third person by the grantor for safekeeping and subject to future

orders and directions, the latter reserving the right to control its disposition by such future orders and directions, the third person thereby becomes agent of the grantor rather than trustee of a trust of which the grantee is beneficiary, and the deed may not be effectually delivered to the grantee in the absence of such future unqualified orders and directions, and without such directions may not be delivered at all after the death of the grantor: First, because the third person has received no orders to that end; and, second, out of the transaction there arises merely the relation of principal and agent which, subject to qualification under special circumstances, terminates at the decease of the principal. The cases to which we have referred cite many others where these principles are discussed. See, also, extensive notes to *Munro* v. *Bowles* (1900), 54 L. R. A. 865; *Murray* v. *Kerney* (1912), 38 L. R. A. (N. S.) 937; *Pentico* v. *Hays* (1907), 9 L. R. A. (N. S.) 224; also, 8 R. C. L. 988, 991 *et seq.*

We do not believe, as urged, that the reservation contained in each of the deeds of a right to sell and convey the premises should be taken as a part of the instructions given to Richards. The reservation deals with the quantity of estate conveyed. The instructions dealt with the disposition of instruments conveying such quantity of estate. Assume that Murphey had brought the deeds to Richards fully prepared, signed and sealed in an envelope, and had informed him that the envelope contained deeds which he had made to these grantees, and had then delivered them to Richards, with positive instructions to keep and deliver them to the grantees on Murphey's death—under such circumstances, the

reservation contained in the deeds could not have been construed as a part of Murphey's instructions, as he would have had no knowledge of such reservation. Or, assume that the reservation was of a right to sell and convey the south half of each tract, or merely of a right to remove a building, or to execute a lease or the like—it could scarcely be said that the reservation in either of the assumed cases should be construed as a part or in modification of instructions with reference to the disposition of the deeds. In each of the assumed cases, the reservation, as here, deals with the quantity of estate or interest conveyed, rather than with the disposition of the deeds. The reservation here is narrower than the estate conveyed. It is not of a right to defeat the estate generally, but only in a specified manner. It was a right merely to sell and convey. Under such reservation, Murphey could not rightfully have mortgaged the lands, or devised them, or executed a lease thereon extending beyond his lifetime, or taken the deeds from the possession of Richards. He reserved the right only in a specified manner to defeat the fee which he had conveyed. We believe that the reservation and the instructions are distinct propositions.

We do not doubt that the facts here were amply sufficient to have sustained a verdict in favor of appellees, returned on a general submission under proper instructions. The fact that a peremptory instruction was given at the close of the evidence, however, has given us some concern. The situation is somewhat peculiar. It is conceded, as we have said, that appellants claim only under the will, and that appellees claim only under the deeds. Appellants concede that if the deeds are valid they

were not entitled to recover.   Appellants were the moving parties.   In order that they might recover, it was necessary that they establish that Murphey owned the land at his decease.   These lands were not referred to in the will, and hence appellants could not ground even a *prima facie* case on the will.   To prove that Murphey died the owner of the lands, it was necessary that they establish the invalidity of the deeds.   This they undertook to do, developing facts as we have indicated, that the deeds were deposited with Richards with unqualified instructions that they be delivered to the grantees, that they were so delivered and accepted.   If these facts fail to disclose the invalidity of the deeds, and especially if they establish that it was Murphey's intent thereby to deliver the deeds for the use of, and ultimately to, the grantees, then appellants' case fails, and at the same time appellees' title is established.   To constitute a delivery, there must be intention to part with control over the deed.   *Berry* v. *Anderson* (1864), 22 Ind. 36. There must be an intention to place the deed under the control of the grantee, or some one for his use. *Hotchkiss* v. *Olmstead* (1871), 37 Ind. 74.   "Ordinarily, the question as to the delivery of a deed is one of fact, to be determined by the jury.   But it may arise in a form to present only a question of law for the determination of the court, or it may present a mixed question of law and fact, in which the jury determines the facts, and the court the law arising upon the facts as proved."   *Somers* v. *Pumphrey* (1865), 24 Ind. 231.   "It is proper for the court to direct a verdict for the defendant when the essential facts showing that the plaintiff has no right to recover are not controverted, or where, taking the plaintiff's

evidence and all the legitimate inferences which a jury might reasonably draw from it, it is insufficient to sustain a verdict in his favor, so that a verdict for the plaintiff, if one should be returned, would be set aside." *Hanna* v. *Terre Haute, etc., R. Co.* (1889), 119 Ind. 316, 21 N. E. 903. See, also, *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 42 N. E. 736, 32 L. R. A. 149, and cases.

The facts here, as we have said, are undisputed. We believe them to be reasonably susceptible only of an inference that Murphey intended a delivery of the deeds. Under the foregoing rules, we therefore conclude that the court was warranted in instructing the jury in appellees' favor. The specific questions presented on this appeal relate to the sufficiency of the evidence, and the refusal of certain instructions. Our discussion disposes of all the questions presented.

The judgment is affirmed.

NOTE.—Reported in 116 N. E. 332. Deeds: What is a delivery of a deed, 53 Am. St. 537; efficacy of deed deposited with third person to be delivered after grantor's death, Ann. Cas. 1915C 378; construction of instrument in form of deed to become effective upon death of grantor, 7 Ann. Cas. 790, Ann. Cas. 1916D 996. See under (1) 40 Cyc 1085; (3) 40 Cyc 1085.